# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| PROMOTE INNOVATION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | NO. 6:10cv575 LED |
| | § | |
| MOTOROLA, INC. and MOTOROLA | § | JURY DEMANDED |
| MOBILITY, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Daniel Setareh's ("Setareh") Motion to Intervene (Doc. No. 28). The

matter has been fully briefed (Doc. Nos. 30, 34, 38, 41 & 42). Having considered the parties'

arguments and for the reasons set forth herein, the Court hereby **DENIES** Setareh's Motion to

Intervene, but finds that Setareh was the first to file as to false marking of U.S. Patents Nos.

4,653,114 ("the '114 patent") and 4,613,901 ("the '901 patent") on various models of Motorola cable

modems, including the Motorola SB5100 Surfboard.[1]

## BACKGROUND

On October 26, 2010, Promote Innovation LLC ("Promote") filed suit against Motorola, Inc.

("Motorola") in the Eastern District of Texas, alleging false patent marking under 35 U.S.C. § 292.

(Doc. No. 1). In relevant part, Promote's complaint alleges:

> Defendant has marked and/or continues to mark its products, including at least its TV
> receiver products (for example, the VIP1200 Series product) . . . with expired or
> otherwise inapplicable patents, including at least U.S. Patent Nos. 4,577,216;
> 4,631,603; 4,790,016; and 4,819,098.

---

[1] The Court previously denied Setareh's Motion to Intervene (Doc. No. 44), but found that Setareh was the
first to file as to these patents and products. The Court issues this opinion to explain its conclusion.

PROMOTE ORIGINAL COMPLAINT AT ¶ 7(Doc. No. 1).

On February 11, 2011, Daniel Setareh filed a separate *qui tam* action for false patent marking against Motorola Mobility Holdings, Inc. in the Central District of California. EX. A, ATTACHED TO SETAREH MTN (Doc. No. 28); *see Daniel Setareh v. Motorola Mobility Holdings, Inc.*, Civil Action No. CV11-1083-ODW (AGRx) (C.D. Cal.) ("Setareh Action"). Setareh's complaint explicitly alleges false marking of the '114 and '901 patents on models of cable modems, including the Motorola SB5100 Surfboard. EX. A AT ¶ 14, ATTACHED TO SETAREH MTN.

On February 9, 2011, Promote and Motorola agreed to settle their claims. (Doc. No. 30-4). As part of the agreement, Promote and Motorola "agreed to include in the settlement any additional potential false marking issues that Motorola may have." PROMOTE RESPONSE AT 1-2 (Doc. No. 30). However, it was not until March 29, 2011 that Promote and Motorola executed a formal settlement agreement. (Doc. No. 30-7). Pursuant to the settlement agreement, Motorola provided Promote "with additional examples of potential false marking, including the specific patents that were included in the . . . Setareh complaint[]." PROMOTE RESPONSE AT 2. After executing the settlement agreement, Promote amended its complaint on April 8, 2011 to include the SB5100 Surfboard modem, as well as the '114 and '901 patents already contained in Setareh's complaint. *See* PROMOTE AMENDED COMPLAINT AT ¶ 8 (Doc. No. 25). In addition, Promote added Motorola Mobility, Inc. as a defendant. *Id.*

Prior to Promote and Motorola's formal execution of settlement, Setareh filed an amended complaint on February 16, 2011, alleging false marking of the '114 and '901 patents against a different entity, Motorola Mobility, Inc. EX. 4, ATTACHED TO MOTOROLA RESPONSE (Doc. No. 34). On April 12, 2011, four days after Promote filed its amended complaint, counsel for Setareh notified

counsel for Promote of the pending Setareh Action in the Central District of California. SETARAH MTN AT ¶ 6; PROMOTE RESPONSE AT 2. Shortly thereafter, Setareh filed the Emergency Motion to Intervene that is now before the Court.

## LEGAL STANDARD

Those who falsely mark their products with expired patents are liable under 35 U.S.C. § 292(a). The statute creates a *qui tam* cause of action, allowing any person to sue on behalf of the United States and receive one half of the resulting fine. *See Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303-04 (citing 35 U.S.C. § 292(b)); *IP Forensics, LLC v. Glock, Inc.*, 2011 WL 2516678, at *2 (E.D. Tex. May 23, 2011). Damages for false marking actions are calculated on a per article basis. *Forest Group*, 590 F.3d at 1301 ("The statute prohibits false marking of '*any* unpatented *article*,' and it imposes a fine for '*every* such offense.'") (emphasis in original).

False marking actions are governed by a "first-to-file" provision. *IP Forensics*, 2011 WL 2516678, at *2. While 35 U.S.C. § 292 does not contain an explicit first-to-file provision, the statute "contemplates only a single action brought by a private individual on behalf of the United States." *Simonian v. Quigley Corp.*, 2010 WL 2837180, at *2 (N.D. Ill. July 19, 2010) (applying *U.S. v. B.F. Goodrich Co.*, 41 F. Supp. 574, 575 (S.D.N.Y. 1941) (reasoning that only the first plaintiff in a *qui tam* action has standing because there is but one action and one division of damages between the plaintiff and the government)); *see Hirschhorn v. Church & Dwight Co., Inc.*, 2011 WL 1303285, at *1 (E.D. Pa. April 6, 2011) ("Once a relator has been assigned the right to sue by being the first to file a *qui tam* relator suit, the government can no longer assign that right to sue to others."). Like the *qui tam* provision of the False Claims Act, § 292 contemplates "but one action and one division" of any damages. *See Champion Labs., Inc. v. Parker-Hannifin Corp.*, 2011 WL 1883832, at *5-6

3

(E.D. Cal. May 27, 2011) (applying the *B.F. Goodrich* line of reasoning, which likens the first-to-file rule for a *qui tam* action under the False Claims Act to false marking actions brought under § 292).

The first-to-file rule promotes efficiency and judicial economy by preventing duplicative litigation. *See Shizzle Pop, LLC v. Wham-O, Inc.*, 2010 WL 3063066, at *2 (C.D. Cal. Aug. 2, 2010). As such, a court that has determined the first-to-file rule applies to a second-filed case has discretion to transfer, stay, or dismiss the second case. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1991)).[2]

## DISCUSSION

### A. Parties' Arguments

Setareh contends he was the first to file a false patent marking action against Motorola regarding the SB5100 Surfboard modem and the '114 and '901 patents. *See* SETAREH REPLY AT 2 (Doc. No. 38). Therefore, he, not Promote, is the proper *qui tam* relator with regard to these patents. Setareh seeks to intervene in the this action, or alternatively, requests a briefing schedule on a motion to strike Promote's Amended Complaint and stay the action with regard to the '114 and '901 patents, as well as Motorola's SB5100 Surfboard modem, until the resolution of the Setareh Action in the Central District of California. SETAREH MTN AT 7.

Motorola responds that Promote was the first to file an action alleging false marking of the

---

[2] Some courts may make a distinction between the first-to-file rule as it pertains to *qui tam* relator standing and comity, where "one district court will refrain from deciding a case if another district court already has a case dealing with the same subject matter." *Hirschhorn*, 2011 WL 1303285, at *2. However, the Court sees little difference between the concepts in their practical applications. *See S.F. Tech., inc. v. Aero Prods. Int'l., Inc.*, 2011 WL 1044856, at *5 (N.D. Cal. Mar. 22, 2011)) (applying the first-to-file rule to determine *qui tam* relator standing when an identical false marking action was previously filed in another district); *S.F. Tech., Inc. v. Glad Prods. Co.*, 2010 WL 2943537, at *4 (N.D. Cal. July 26, 2010) (same); *Quigley*, 2010 WL 2837180, at *1-2 (N.D. Ill. July 19, 2010) (determining a lack of relator standing based on an identical, earlier-filed false marking action).

patents-at-issue.[3]  MOTOROLA RESPONSE AT 1.  Motorola asserts that the language of Promote's

original complaint, which alleges false marking of products with expired patents, "including at least

U.S. Patent Nos. 4,577,216; 4,631,603; and 4,819,098," sufficiently "includes any and all products

marked by Motorola with expired patent numbers," as well as allegations of false marking of the

'114 and '901 patents.  *See id.* at 4.  Motorola further argues that the claims Setareh seeks to preserve

have already been settled; Motorola has paid the settlement amount to Promote and the United States

pursuant to a broad settlement that encompasses the patents-at-issue.  *Id.* at 5-6.  Motorola contends

the settlement agreement was effective before Setareh amended his complaint to include Defendant

Motorola Mobility, Inc.  *See id.* at 7.

In addition, Motorola asserts that venue is proper in the district where the action was first

filed.  Therefore, because Promote was the first to file as to the '114 and '901 patents in the Eastern

District of Texas, this Court should determine the issues in this action.  Consequently, this action

should not be stayed in favor of Setareh's pending action in California.  *Id.* at 8-10.  Finally,

Motorola argues that Setareh's complaint in the Central District of California is insufficient under

Fed. R. Civ. P. 9(b).  *Id.* at 10.

**B.     First-to-File**

To have proper *qui tam* relator standing in a false marking case, courts seem to agree that the

relator must (1) be the first-to-file and (2) must explicitly state which patents were allegedly falsely

marked.  *See id.* at *3; *S.F. Tech, Inc. v. Glad Prods. Co.*, 2010 WL 2943537, at *4 (N.D. Cal. July

26, 2010); *see also Shizzle Pop*, 2010 WL 3063066, at *2 (finding a second-filed false marking

---

[3] Promote's arguments are similar to Motorola's.  *See generally* PROMOTE RESPONSE.  For purposes of discussion, the Court recites Motorola's arguments as if Promote joins in Motorola's response.

action was not duplicative of the first because different patents were alleged in each action, despite allegations that the same product was falsely marked). In contrast, the inclusion of products in the complaint may be exemplary or non-exhaustive. *See IP Forensics*, 2011 WL 2516678, at *3 (finding that the first-filed complaint encompasses any automatic pistol falsely marked with the explicitly stated patents because the complaint alleged "*products. . . including, but not limited to*, the Glock 23 automatic pistol."); *Simonian v. Irwin Indus. Tool Co.*, 2011 WL 147717, at *5 (N.D. Ill. Jan. 18, 2011) (finding that the use of broad language may encompass products not listed in the complaint, as long as a specific expired patent is asserted).

To determine the entity that was first to file, any competing complaints must be compared. The earliest complaint that specifically identifies the patents at issue determines which action was first filed. Requiring that the parties explicitly state which patents are at issue stems, in part, from the statute, which determines liability on a per article basis. Without knowing which expired patents are at issue, the identity and number of falsely marked articles cannot be determined. Likewise, damages cannot be calculated in accordance with the statute unless the patents and at least one exemplary product are identified.

It is true that Promote filed its original complaint before Setareh. However, Promote failed to explicitly allege false marking of the '114 and '901 patents in its October 26, 2010 complaint. It was not until the amended complaint, filed April 8, 2011, that Promote specifically alleged false marking of the '114 and '901 patents and the SB5100 cable modem. PROMOTE AMENDED COMPLAINT AT ¶ 8. Prior to Promote's amended complaint, however, Setareh had already filed a complaint as to the false marking of the '114 and '901 patents on Motorola cable modems, including the SB5100 Surfboard modem. Even if Setareh's original complaint improperly named Motorola

Mobility Holdings, Inc. as a defendant, Setareh properly named Motorola Mobility, Inc. in his amended complaint filed February 16, 2011, almost two months prior to Promote's amended complaint. *See* EX. 4, ATTACHED TO MOTOROLA'S RESPONSE. Therefore, both Setareh's original and amended complaints alleging false marking of the '114 and '901 patents pre-date Promote's duplicative allegations of false marking of the '114 and '901 patents.

Accordingly, the Court finds that a portion of Promote's amended complaint is encompassed by Setareh's first-filed complaint. Therefore, the Court finds Promote lacks standing to sue for false marking of the '114 and '901 patents.

Further, Setareh need not intervene in the above-styled case because he was the first-to-file as to the '114 and '901 patents.[4] Therefore, his Motion to Intervene is **DENIED**. For the same reasons, Promote's claims of false marking of the '901 and '114 patents on Motorola cable modems, including the SB5100 Surfboard modem, in the Eastern District of Texas are stayed pending the resolution of the Setareh Action in California.

## C.  Promote/Motorola Settlement Agreement

As stated above, Motorola argues that it settled any false marking action concerning the '114 and '901 patents prior to Setareh's amended complaint. The Court disagrees. Motorola and Promote did not formalize their settlement until March 29, 2011, about a month after Setareh filed his amended complaint. Because Promote did not initially have proper standing to bring allegations of false marking of the '114 and '901 patents, the settlement between Promote and Motorola cannot

---

[4] Venue in the Central District of California is proper because Setareh was the first-to-file as to the '114 and '901 patents. *See Micron Tech. Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) ("The general rule favors the forum of the first-filed action."). As such, Motorola's argument that Setareh's complaint fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b) is not properly before this Court.

apply to said patents.[5]

Further, the settlement agreement uses broad language to purportedly include the '114 and '901 patents without explicitly naming the patents-at-issue. Putting the timing of the settlement agreement aside, the Promote/Motorola agreement does not expressly state the patent numbers for which liability is released. Instead, the agreement attempts to release all liability with respect to all patents and products that Motorola may have falsely marked. *See* Doc. No. 36. Such a general release is not acceptable, despite Motorola's reliance on *Irwin Tool*. First, a settlement that does not explicitly identify the patents at issue does not outweigh a complaint that specifies which patents were used to allegedly falsely mark products. Second, although the court in *Irwin Tool* allowed a broad release of "improper marking claims whether known or unknown, and whether or not asserted in the lawsuits," the settlement agreements nonetheless specify the expired patent-at-issue. *See Irwin Tool*, 2011 WL 147717, at *2 ("For avoidance of doubt, ***the Released Claims include any Section 292 liability with the Expired Patents [defined to include the '148 Patent] and any Newell Product marked with one or more of the Expired Patents***.") (emphasis in original). Because the Promote/Motorola settlement agreement fails to name the '114 and '901 patents, the settlement agreement does not preclude Setareh's false marking claims to the same.[6]

---

[5] Promote filed its amended complaint—in accordance with its settlement agreement with Motorola—after Setareh's amended complaint. This act indicates that Promote and Motorola did not believe Promote's original complaint encompassed the '114 and '901 patents. On the other hand, Setareh's amended complaint, filed prior to the Promote/Motorola settlement, explicitly identifies the '114 and '901 patents.

[6] Even if the Court were to look at any agreements prior to the formalization of the Promote/Motorola settlement agreement, *i.e.*, an agreement to settle on February 9, 2011, there is no specific reference to the patents-at-issue such that Setareh's claims regarding the '114 and '901 patents would be precluded. *Irwin Tool*, 2011 WL 147717, at *4-5 ("The settlement agreements define the 'Expired Patents' to include the '148 Patent that is the subject of Mr. Simonian's proposed amended complaint.").

8

The court in *Irwin Tool* further noted that the United States accepted the prior settlements, "relinquishing any right to damages from [the defendant] in another lawsuit alleging improper marking with the same expired patent." *Id.* at \*4. However, the United States perceives Setareh as the first to file false marking claims regarding the '114 and '901 patents and does not appear to accept the Promote/Motorola settlement as to these patents:

> While we received a check from Motorola last week, ostensibly in settlement of the *Promote Innovation v Motorola* false marking action, we are holding that check and have not forwarded it for deposit. . . . [W]e are inclined to view Setarah's [sic] claims as being the first for false marking of the '901 and '114 patents, and suggest a carve out from the settlement in the *Promote Innovation* case for those claims.

(Doc. No. 34-5). The United States' rejection of the Promote/Motorola settlement as to the '114 and '901 patents weighs against finding that this agreement precludes Setareh's false marking action regarding the '114 and '901 patents.

## CONCLUSION

For the reasons stated above, Setareh was the first-to-file false marking claims as to the '114 and '901 patents on various models of cable modems including, but not limited to, the Motorola SB5100 Surfboard cable modem. Consequently, Setareh need not intervene in the instant action and his Motion to Intervene is therefore **DENIED**.

In addition, Promote lacks standing to bring claims under 35 U.S.C. § 292 on the same patents. Accordingly, Promote's claims as to the '114 and '901 patents and products including, but not limited to, cable modems such as the Motorola SB5100 Surfboard cable modem are **STAYED** pending resolution of the Setareh Action in the Central District of California.

**So ORDERED and SIGNED this 11th day of August, 2011.**

9

_John P Love_

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE